UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DESIRAY HALL,                                           **REPORT AND**
                                                        **RECOMMENDATION**
                              Plaintiff,

v.                                                      08-CV-00526(A)(M)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____

        This case was referred to me by Hon. Richard J. Arcara to hear and report in

accordance with 28 U.S.C. §636(b)(1) [5][1].  Before me are the parties' cross-motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(c) [7, 9].  For the following

reasons, I recommend that defendant's motion for judgment on the pleadings be DENIED, and

that plaintiff's cross-motion be GRANTED in part and DENIED in part.


                              **PROCEDURAL BACKGROUND**

        Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the

Commissioner of Social Security denying her application for Supplemental Security Income

("SSI") [1].  Plaintiff filed an application for SSI on December 30, 2003 (T43-46, 54-55).[2]  This

claim was initially denied on August 26, 2004 (*see* T44-45).  A hearing on the claim was

conducted before ALJ Robert W. Young on May 22, 2006 (T18-24, 297-

_____

[1]        Bracketed citations refer to the CM/ECF docket entries.

[2]        References to "T" are to the certified transcript of the administrative record.

327).  Plaintiff was represented at the hearing by Paul M. Pochepan, Esq. (T18).  On January 11,

2007, ALJ Young issued a decision denying plaintiff's claim (T18-24).  The ALJ's

determination became the final decision of the Commissioner on June 27, 2008, when the

Appeals Council denied plaintiff's request for review (T330-332).


## THE ADMINISTRATIVE RECORD

### A.      Relevant Medical Evidence

Plaintiff was struck by a car on July 12, 2001 and taken to the emergency

department at Erie County Medical Center ("ECMC"), where a physical examination noted a

slight limp and a contusion to the left ankle (T136-137).  Plaintiff was instructed to take Tylenol

as needed upon discharge (Id.).

Plaintiff was a involved in another motor vehicle accident on August 30, 2001

and taken to the emergency department at Kaleida Health (T193-195).  Plaintiff complained of

pain to the right shoulder and right upper back (T193).

Plaintiff continued to receive treatment from August 31, 2001 to February 18,

2003 at Sheehan Memoriam Hospital for complaints of neck, shoulder, and back pain, as well as

headaches and cervical, thoracic, and lumbar spinal tenderness and strain (T101-115).  An

August 15, 2002 computed tomography ("CT") scan performed as a result of plaintiff's

headaches was normal (T116).

Plaintiff also underwent physical therapy from September 2001 to February 20, 2002 at All Care Physical Therapy Services, P.C. (T180-192). Plaintiff was discharged for lack of attendance on February 28, 2002, having achieved sixty percent improvement (T180).

M. Reza Samie, M.D. performed a neurological consultation on August 26, 2002 regarding plaintiff's complaints of headaches (T255). Dr. Samie assessed plaintiff's symptomatology as "most likely indicative of underlying migraine" and placed plaintiff on Imitrex and Amitriptyline (T255).

On September 14, 2003, plaintiff was treated at the ECMC emergency department for a laceration to her right Achilles tendon (T130, 138). Plaintiff received a pressure dressing and cast, and was provided with crutches (T130-131).

On October 27, 2003, John Ward, D.C. referred plaintiff to the Western New York MRI Center for magnetic resonance imaging ("MRI") based on her neck pain and headaches (T160). An MRI of plaintiff's cervical spine revealed a "slight reversal of the normal lordosis of the cervical spine", as well as "narrowing of the C6-7 interspace" (Id.). "[A] broad-based herniation of the nucleus pulposus of the protrusion type" was found at the C6-7 level, with "no stenosis or cord compression evident" (Id.). The MRI report concluded that plaintiff's right shoulder was "most suggestive of tendinopathy with an intrasubstance tear", and noted "hypertrophic changes of the acromioclavicular joint with mild impingement upon the rotator cuff" (T161).

On December 16, 2003, Wayne B. Burnett, PT performed an orthopedic physical therapy evaluation (T117-120). Plaintiff's right hip and knee were within normal active range of motion and strength, but unilateral stance time on the right leg was only one second and plaintiff

was unable to perform bilateral heel raise or toe raise in standing position (T118). Mr. Burnett rated plaintiff's rehabilitation potential as excellent (Id.). Plaintiff was referred to physical therapy, but was discharged on February 4, 2004 due to lack of attendance (T121).

On February 4, 2004, A. Marc Tetro, M.D., an orthopedist, evaluated plaintiff for complaints of right shoulder pain (T164). At this time, plaintiff was taking Ambien, Lortab, Paxil CR, and Soma (Id.). Upon physical examination, Dr. Tetro noted that plaintiff was not in acute distress (T165).

Dr. Tetro assessed plaintiff with "right shoulder/arm pain secondary to MVA with: 1. Rotator cuff tendinitis with possible rotator cuff tear [,] 2. AC joint arthrosis[,] 3. Possible labral tear [, and] 4. Probable cubital tunnel syndrome" (T165-166). Dr. Tetro concluded that "currently Ms. Hall is not working as per the recommendation of Dr. Smith and Dr. Ward. She is disabled from her regular employment" (Id.).

Dr. Douglas performed a physical examination of plaintiff on February 11, 2004 and assessed plaintiff with right foot pain and muscle spasms (T145-146). Dr. Douglas examined plaintiff again on March 11, 2004 and noted full range of motion at the ankle, and decreased range of motion at the knee (T142). Dr. Douglas assessed plaintiff with right leg neuropathy (Id.).

Dr. Ward completed a report for the Division of Disability Determinations on April 16, 2004 (T151-152). Dr. Ward first saw plaintiff on September 18, 2003, and administered three treatments per week (T151). At this time, plaintiff was taking Lortab and Soma four and six times a day, respectively (T152). Dr. Ward diagnosed plaintiff with (1) cervical herniated nucleus pulposes with associated radiculopathy and myofascial pain

syndrome, (2) a severed Achilles tendon and (3) mild depression and signs of clinical depression (T151-152, 154). Dr. Ward indicated plaintiff's current symptoms as neck pain and weakness in the right arm (Id.). Plaintiff's gait was antalgic and plaintiff could not tandem walk unaided, walk toe-toe, heel-heel, or rise from a squatting position (T153). Dr. Ward assessed that the Achilles tendon injury precluded these movements (Id.). The range of motion chart indicated that plaintiff did not have full range of motion in the cervical region of the spine or the ankle (T159). Plaintiff's use of fingers, hands, and arms was normal for rapid alternating movements and fine manipulation (T154). Plaintiff was normal in response to a pinprick sensory examination; other sensory examinations were not conducted (Id.).

Dr. Ward found that plaintiff was limited in her ability to lift and carry, could stand or walk less than two hours per day, and could not sit no more than six hours per day (T156). He concluded plaintiff to be "totally disabled" in her ability to do work-related physical activities (T155).

Plaintiff presented herself to the Sisters Family Health Center ("SFHC") on April 27, 2004, complaining of persistent right leg pain (T178). It was noted that plaintiff's "leg injury, tendon, muscle and artery severance improved over 6 months with PT" (Id.). At a follow-up visit on June 15, 2004, plaintiff reported that she felt better, experienced better sensations, and had improved muscle strength (T176). Plaintiff was prescribed Flexeril and it was recommended that she continue physical therapy and rehabilitation (Id.).

Plaintiff presented herself to SFHC on August 10, 2004, complaining of constant pain in the right leg and right shoulder (T174). Plaintiff was diagnosed with a right rotator cuff tear (Id.).

Plaintiff was examined by Jeffrey Lewis, M.D. of the Buffalo Neurosurgery Group on November 30, 2004 on referral from Dr. Ward (T276-281). Dr. Lewis found plaintiff's gait to be normal with mild restricted range of motion in all planes of the cervical spine (T281). Plaintiff was re-evaluated by Dr. Lewis on June 22, 2005 after a repeat MRI. He diagnosed plaintiff with a "definite central disc herniation at C6-7", in addition to impingement of the cervical cord and radiated pain (T278). He recommended artificial cervical disc replacement surgery with anterior cervical microdiscectomy (T278-279). On September 28, 2005 Dr. Lewis noted that he would be proceeding in the near future with anterior cervical microdiscectomy and fusion at C6-7 (T276).

On July 8, 2005, plaintiff was evaluated at Kaleida Behavioral Health ("Kaleida") by Katherine Kwon for depression (T270). Plaintiff was described as depressed, with average to above average intelligence, and no psychosis (Id.). Plaintiff's insight and judgment were "ok" (T273). Ms. Kwon identified adjustment disorder with depressed mood, and recommended that plaintiff see a doctor for medication (T274).

Rebecca Phillips, M.D. of Kaleida evaluated plaintiff on July 11, 2005 (T267-269). Dr. Phillips diagnosed plaintiff with major depressive disorder and chronic pain and prescribed Celexa and Trazodone (Id.). Plaintiff was given a global assessment of function ("GAF") of 45-50[3] (T267).

Karen Kemphos re-assessed plaintiff at Kaleida on September 20, 2005 for complaints of anxiety, feeling "out of control," difficulty sleeping, and trouble getting out of bed

_____

[3]        "A GAF score of 50 or lower suggests a 'serious impairment' in the level of functioning". Garcia v. Commissioner of Social Security, 496 F. Supp. 2d 235, 238 (E.D.N.Y. 2007).

(T261-65). Plaintiff's current medications included Motrin and Tramadol, Lortab, and Soma (Id.). Kemphos assessed plaintiff with a GAF of 45, prescribed Cymbalta for depression, and recommended out-patient counseling (T260).

Plaintiff was interviewed by Mid-Erie Counseling & Treatment Services on January 26, 2006 and diagnosed with major depressive disorder with psychotic features (T288-91). Plaintiff was assessed with a GAF of 65. (Id.)

On March 30, 2006 plaintiff was evaluated by Pratibha Bansal, M.D., of the Pain Rehab Center of Western New York, who diagnosed plaintiff with "[e]xtensive amount of myofacial pain in neck, shoulder, upper back, leg muscles".

**B.      Consultative Examinations**

Plaintiff was examined by Samuel Balderman, M.D. on March 11, 2004 (T147). At the time, plaintiff was taking Lortab q.i.d., PRN, Soma PRN, Ambien, and Paxil qd. (Id.). Dr. Balderman noted that plaintiff did not appear to be in acute distress, showed a limp favoring the right lower extremity, could not walk on heels and toes, declined to squat due to pain in right leg, had a normal stance, was able to rise from a chair without difficulty, but required assistance getting on and off the exam table (T148). Dr. Balderman assessed plaintiff's cervical spine as demonstrating full flexion, extension, lateral flexion, and full rotary movements bilaterally, albeit with mild pain (T149). The thoracic spine gave no indication of scoliosis, kyphosis or abnormality (Id.). The lumbar spine showed flexion to 80 degrees, full extension, full lateral flexion and full rotary movement bilaterally (Id.). The elbows, forearms, and wrists had full range of motion bilaterally (Id.). Plaintiff's hips, knees, and left ankle also showed full range of

motion (Id.).  Dr. Balderman noted a strength of 5/5 in the upper extremities, 4/5 in the right

lower extremity, and 5/5 in the left lower extremity (Id.).  No motor or sensory deficit was noted

in the neurologic evaluation (Id.).  No significant or trophic change or muscle atrophy was

evident in the extremities (Id.).  Hand and finger dexterity was intact, with a bilateral grip

strength of 5/5 (T148-149).

        Dr. Balderman made a diagnosis of moderate inflammation of the right shoulder

and a laceration of the right lower extremity immediately above the Achilles tendon (T149).  Dr.

Balderman assessed that plaintiff had moderate to marked limitations in walking, standing, and

climbing stairs due to the laceration of the right lower extremity, and recommended a re-

evaluation in four months.

        Dr. Verna Yu, a state agency review physician, completed a RFC assessment

form on August 9, 2004 (T167-173).  Dr. Yu's primary diagnosis was an Achilles tendon repair,

with chronic right shoulder pain as a secondary diagnosis (T170).  Dr. Yu determined plaintiff's

exertional limitations as follows: occasionally lifting or carrying twenty pounds, frequently

lifting or carrying ten pounds, standing or walking for six hours a day, sitting for six hours a day,

and an unlimited capacity to push or pull (T171).  Plaintiff had no postural, visual,

communicative, or environmental limitations, but had a slight manipulative limitation against

frequent overhead pushing and pulling with the right arm (T172).  Plaintiff's symptoms were

determined to be partially credible and "attributable to MDI but not to the degree alleged"

(T172A).  Dr. Yu concluded that plaintiff's symptoms did not preclude her from sedentary or

light work (Id.).

**C. Administrative Hearing of May 22, 2006**

**1. Plaintiff's Testimony**

Plaintiff, who was 41 years old at the time of the hearing, testified that she had completed high school and attended, but did not complete college (T303). During the relevant time period of her claim, plaintiff had lived on the second floor of a two family home which could only be accessed by stairs, and most recently had been living in a two story apartment (Id.). Plaintiff can read and write English, and has several vocational skills, including a certification as an occupancy specialist, real estate license, and training as a dental assistant (T304).

Plaintiff testified that after the accident, she experienced extreme pain in her upper and lower back, and right shoulder (T310). Plaintiff describes the pain as constant in her neck, right side, and shoulder, but also radiating into her upper and lower back and leg. As a result of the pain, plaintiff became depressed, and missed medical appointments (T312). Plaintiff testified that she could sit for about 15 or 20 minutes before she would need to change positions or stand for 5 to 10 minutes, with the most relief came from lying down and elevating her leg (T313-14). Plaintiff testified that she can walk "maybe a quarter of a block," and can only lift light weights (T315-16). While plaintiff states she often needs help, she testified that she prepares food daily for her son, washes dishes, mops small spills, makes her bed, does laundry, dresses and bathes herself, can make herself "neat," ties her own shoes, picks up light objects off of the floor, "rarely" sweeps with a broom, and can make correct change when making a purchase (T318-21). Plaintiff has now learned to perform many activities with her left hand that she used to perform with her right hand (T321).

## 2. Vocational Expert Testimony

Ruth Romberg, a vocational expert, testified (T322-25) that plaintiff's past work in retail sales was skilled work at the light level (T322), that her past work as an apartment specialist was semi-skilled work at the light level (T322), and that her past work as a dental assistant was skilled work at the light level (T323). Ms. Romberg testified that an individual with plaintiff's past relevant work experience and residual functional capacity would be capable of making an adjustment to other jobs in the regional and national economy at the light level (Id.).

## D. ALJ Young's January 11, 2007 Decision

ALJ Young found that plaintiff had the following severe impairments: depression, osteoarthritis, and back disorders (T20). He found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No.4 (Id.). ALJ Young concluded that plaintiff has the RFC for work at the light exertional level with restriction of frequent overhead push/pull activities with her right arm (T22).

In reaching this conclusion, ALJ Young noted that "a laceration is not an impairment that lasts 12 months." (T21). ALJ Young gave Dr. Ward's conclusion that plaintiff was totally disabled no significant weight and no probative value, on the grounds that it was not consistent with, or supported by, the objective medical evidence of record and plaintiff's own self-described activities (Id.). ALJ Young determined that while plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms,

plaintiff's statements concerning the intensity and effects of these symptoms were not entirely credible, and were inconsistent with her allegations that she is totally disabled (T22).

ALJ Young determined that plaintiff lacked the RFC to perform any past relevant work (T23). However, considering plaintiff's age, education, work experience, and the vocational expert's testimony regarding plaintiff's RFC, he found that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as information clerk, general office clerk, or packer (T23-24), and thus has not been under a disability as defined in the Social Security Act since December 30, 2003, her alleged amended onset date (T24).

## DISCUSSION AND ANALYSIS

### A.    Scope of Judicial Review

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner. *See* Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole. *See* Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir.

1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  <u>Martin v. Shalala</u>, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard."  <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal."  <u>Townley</u>, <u>supra</u>, 748 F. 2d at 112.

**B.      The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  The impairments must be  "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.      The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

 2.      If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.      If the claimant has a 'severe impairment,' the
        Commissioner must ask whether, based solely on medical
        evidence, claimant has an impairment listed in Appendix 1
        of the regulations.  If the claimant has one of these
        enumerated impairments, the Commissioner will
        automatically consider him disabled, without considering
        vocational factors such as age, education, and work
        experience.

4.      If the impairment is not 'listed' in the regulations, the
        Commissioner then asks whether, despite the claimant's
        severe impairment, he or she has residual functional
        capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work,
        the Commissioner then determines whether there is other
        work which the claimant could perform.  The
        Commissioner bears the burden of proof on this last step,
        while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000).  *See* 20 C.F.R. §§404.1520, 416.920.

**C.      ALJ Young had no duty to contact Drs. Tetro or Ward**.

Plaintiff argues that ALJ Young was under a duty to recontact Drs. Tetro and

Ward for more specific medical interpretations of why plaintiff was "disabled."  Instead, "the

ALJ found Dr. Ward's well-founded opinion to be inconsistent with the objective medical

evidence, while he appears to ignore Dr. Tetro's opinion altogether."  Plaintiff's Memorandum

of Law [9-1], p. 6.  In his decision on January 11, 2007, ALJ Young made no explicit mention

of Dr. Tetro's medical opinion, but explained his treatment of Dr. Ward's assessment as

follows:

"In April of 2004, one of the claimant's treating physicians, Dr. J.
Ward, opined that the claimant had a cervical spine herniated disc
with radiculopathy and myofascial pain, neck pain, and right arm

weakness of a 3/5 . . . . He concluded that the claimant is totally disabled. However, the Administrative Law Judge does not give this conclusion any significant weight as it is not consistent with, or supported by, the objective medical evidence of record and the claimant's own testified to activities of daily living. Thus, this conclusion that claimant is totally disabled is of no probative value" (T21).

Generally, an ALJ has an affirmative duty to develop the administrative record. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); Pettey v. Astrue, 582 F.Supp.2d 434, 436 (W.D.N.Y. 2008) (Larimer, J.). "Under 20 C.F.R. §404.1512(e), the ALJ must recontact a claimant's treating physician when the evidence received is 'inadequate . . . to determine whether [the claimant is] disabled.'" West v. Barnhart, 2008 WL 2561991, *3 (W.D.N.Y. 2008) (Telesca, J.).

This duty to recontact applies to internal inconsistencies within an actual report or opinion, not just to inadequacy of the record as a whole. See Clark v. Commissioner of Social Security, 143 F. 3d 115, 118 (2d Cir. 1998); Dundas v. Astrue, 2008 WL 4282621, *5 (W.D.N.Y. 2008) (Siragusa, J.) (requiring ALJ to attempt to expand the record before rejecting opinion unsupported by the physician's findings); Stevens v. Commissioner of Social Security Administration, 2008 WL 5057029, *5 (N.D.N.Y. 2008) ("An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion 'contains a conflict or ambiguity that must be resolved . . . .").

Specifically, 20 C.F.R. §404.1512(e) provides in relevant part:

"(e) Recontacting *medical sources*. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your *treating physician or psychologist or other medical source* to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source *when the report from your medical source* contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." (emphasis added).

Thus, 20 C.F.R. §404.1512(e) presents two threshold requirements: the report must have been received from a treating physician, a psychologist, or some other "medical source," and the report must contain some conflict or ambiguity that must be resolved, lack necessary information, or not appear to be based on medically acceptable techniques. Id.

I find both Drs. Tetro and Ward to be "medical sources" in satisfaction of the first requirement. The Social Security Administration clarified its policy concerning medical sources in Social Security Ruling ("SSR") 06-03p,[4] stating "[t]he term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.'" 2006 WL 2329939, at *1 (2006). Acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, and speech language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; 20 C.F.R. §404.1513(a). "Other" health care providers who are not acceptable medical sources include, among others, nurse-practitioners, physicians' assistants, and chiropractors. SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. §404.1513(d). As an acceptable medical source and an "other" medical source respectively, Dr. Tetro, a licensed physician, and Dr. Ward, a chiropractor, are both considered medical sources.

---

[4]     "Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the Social Security Act. " Genier v. Astrue, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (Summary Order) (quoting Gordon v. Shalala, 55 F. 3d 101, 105 (2d Cir.1995)).

However, this does not end the inquiry.  In order to require an ALJ to recontact a medical source, the medical source's report must also present some inconsistency, lack information, or fail to  appear to be based on medically acceptable techniques.  *See* 20 C.F.R. §404.1512(e); Hartnett v. Apfel, 21 Supp.2d 27, 221 (E.D.N.Y. 1998) ("if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly").

The only support plaintiff presents for her argument that Dr. Tetro should have been recontacted is ALJ Young's alleged inability to determine the basis for Dr. Tetro's conclusion that plaintiff was "disabled from full-time competitive employment". Plaintiff's Memorandum of Law [9-1], p. 6.  However, ALJ Young was *not* unable to determine the basis for this "conclusion" because the conclusion was never made–the Commissioner correctly recognizes plaintiff's argument as a mischaracterization of Dr. Tetro's opinion. Commissioner's Reply Memorandum of Law [10], p. 2.  In his opinion, Dr. Tetro concludes "currently [plaintiff] is not working as per the recommendations of Dr. Smith and Dr. Ward.  She is disabled from her regular employment" (T166).  Dr. Tetro's opinion states that plaintiff is only disabled from performing her "regular employment", not that plaintiff is disabled from *all* employment. Id.

Because plaintiff does not demonstrate that Dr. Tetro's report presented any of the concerns raised in 20 C.F.R. §404.1512(e), ALJ Young had no duty to recontact Dr. Tetro. Perez, supra, 77 F. 3d at 48 ("Because there is nothing to indicate that the reports were inconclusive, the ALJ was not obligated to request further information . . . .").

Plaintiff also argues that ALJ Young should have recontacted Dr. Ward because he could not determine the basis for Dr. Ward's conclusion that plaintiff was "disabled from full-time competitive employment". Plaintiff's Memorandum of Law [9-1], p. 6. Because it does not appear that ALJ Young was unable to determine the basis for this conclusion, I find this argument unconvincing.

ALJ Young's decision makes no mention of any *internal* inconsistencies within Dr. Ward's report, nor does ALJ Young discount the report for lack of information or the absence of acceptable medical techniques (T21). Instead, it appears that ALJ Young analyzed the report under the factors for considering opinion evidence of 20 C.F.R. 404.1527(d) and simply declined to give the opinion any weight because "it is not consistent with, or supported by, the objective medical evidence of record and the claimant's own testified to activities of daily living" (T21). *See* SSR 06-03p, 2006 WL 2329939, *4 (S.S.A.) (clarifying that the weight of opinion evidence from "other sources" is analyzed in terms of its consistency with other evidence as well as the other factors of 20 C.F.R. 404.1527(d)).

While plaintiff may dispute the lack of weight ALJ Young assigned to Dr. Ward's opinion under 20 C.F.R. §404.1527, this does not activate the duty to recontact under 20 C.F.R. §404.1512(e). *See* Netter v. Astrue, 272 Fed. Appx. 54, 56 (2d Cir. 2008) (Summary Order) ("Netter's final claim is that the ALJ was obliged to affirmatively develop the record because it found Dr. Regalla's clinical records to be lacking. However, the ALJ rejected Dr. Regalla's opinion because it was contradicted by the opinions of other doctors and the record evidence-not because it was inadequately supported by her own clinical records."); Barney v. Astrue, 2008 WL 4384456, *5 (W.D.N.Y. 2008) (Skretny, J.) ("Here, the ALJ did not find any

inadequacy or ambiguity in the medical evidence that prevented him from making a disability determination. Rather, he found that the medical evidence did not support a finding that Plaintiff was disabled under the Act. Consequently, the ALJ was under no obligation to recontact Plaintiff's treating physicians").

The Commissioner appears to concede that Dr. Ward's report *did* suffer, in part, from internal inconsistencies: "Dr. Ward's conclusions that plaintiff was disabled . . . [were] not supported by the chiropractor's own findings, including full motor strength of the lower and left upper extremities, . . . fine manipulation, and rapid alternating movements." Commissioner's Reply Memorandum of Law [10], pp. 4-5. However, even accepting this characterization, the report must have "ambiguity that *must* be resolved". 20 C.F.R. 404.1512(e) (emphasis added). Even if there is some inconsistency, Dr. Ward's report is not so inadequate as to prevent the ALJ from making a disability determination. *See* Muschaweck v. Astrue, 2008 WL 4415208, *4 (W.D.N.Y. 2008) (Skretny, J.) ("Here, although the ALJ noted that some of Dr. Martin's conclusions were not supported by his treatment notes, he was not prevented from making a disability determination." (citation omitted)). *See* Michels v. Astrue, 297 Fed. Appx. 74, 74 (2d Cir. 2008) (Summary Order) ("Given the inconsistencies here, the ALJ was free to discount Dr. Bogner's opinions in favor of a broader view of the medical evidence."); Smolinski v. Astrue, 2008 WL 4287819, *4 (W.D.N.Y. 2008) (Skretny, J.) ("despite any ambiguity, the ALJ was not required to seek clarification because even assuming that he did, the ALJ found the form internally inconsistent and in conflict with progress notes prepared by the nurse practitioners."). Therefore, I find that ALJ Young had no duty to contact Drs. Tetro or Ward.

**D.      ALJ Young Properly Weighed Treating Source Evidence**

Plaintiff argues that ALJ Young erred by failing to properly assess the opinion of her "treating doctors" under SSR 96-2P. Plaintiff's Memorandum of Law [9-1], pp. 7-13.  The Commissioner argues that the medical sources plaintiff relies upon are not "treating sources" subject to SSR 96-2P. Commissioner's Reply Memorandum of Law [10], pp. 3-4.  In his decision on January 11, 2007, ALJ Young made no explicit mention of Dr. Tetro's medical opinion, and explained his treatment of Dr. Ward's assessment as discussed <u>supra</u>.

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a *treating physician*." <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (emphasis added). *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2P, 1996 WL 374188, *5 (S.S.A.) ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." <u>Schaal v. Apfel</u>, 134 F. 3d 496, 505 (2d Cir.1998).  However, because plaintiff presents no "treating sources", ALJ Young did not err under SSR 96-2P, and remand is not warranted.

The definition of "treating source" is provided in 20 C.F.R. §404.1502.  In relevant part:

> "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or

has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship with you*. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source." Id.

(emphasis added.)

Plaintiff refers to Dr. Tetro and Dr. Ward as treating sources. Plaintiff's Memorandum of Law [9-1]. However, plaintiff presents no argument as to *why* Dr. Tetro meets this definition. Plaintiff was seen once by Dr. Tetro (T66), was never scheduled for another appointment, id., and only one report from Dr. Tetro was provided (T164-66). The lack of any ongoing treatment relationship with Dr. Tetro undermines him being considered a treating source. *See* 20 C.F.R. §404.1502.

Plaintiff's characterization of Dr. Ward as a treating source is equally unavailing. As a chiropractor, Dr. Ward is not an "acceptable medical source." Diaz v. Shalala, 59 F. 3d 307, 312 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide medical opinions"); 20 C.F.R. 404.1513. SSR 06-03p, which plaintiff continually references, clearly

states that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. §404.1502 . . . ." 2006 WL 2329939, *2 (S.S.A.). Dr. Ward is not an acceptable medical source, and therefore is not a treating source as defined by the SSA.

Because neither Dr. Tetro nor Dr. Ward are treating sources, I find that the requirements of SSR 96-2P did not apply. Moreover, Dr. Ward's assessment that plaintiff was "totally disabled" (T155) is not entitled to controlling weight because "the Federal regulations make clear that whether a physician believes an applicant is 'disabled' is irrelevant, since this determination is reserved to the Commissioner." Gladden v. Commissioner of Social Security, 2009 WL 2171400, *2 (2d Cir. 2009) (summary order).


**E.        ALJ Young Did Not Properly Assess Plaintiff's Subjective Complaints**

Plaintiff alleges that ALJ Young made various errors in assessing the credibility of her subjective complaints, including not giving plaintiff's subjective complaints "great weight" and failing to comply with relevant Social Security Regulations. Plaintiff's Memorandum of Law [9-1], pp. 15-18. However, "[t]he Commissioner maintains that in light of the totality of the medical and non-medical evidence of record, the ALJ correctly found that plaintiff's subjective complaints of pain to the disabling degree alleged were not entirely credible." Commissioner's Reply Memorandum of Law [10], p. 7.

A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." Latham v. Commissioner of Social Security, 2009 WL 1605414, *15 (N.D.N.Y. 2009). While the record

as a whole makes clear that plaintiff suffers some level of pain, the evidence as to the degree of this pain is conflicting.

Dr. Ward concluded that plaintiff was "totally disabled" from *all* work activity (T155); Dr. Lewis stated that plaintiff suffered from "severe neck pain with right cervical radiculopathy" (T276); and Dr. Bansal diagnosed that "the patient presents with cervical and lumbar disk degeneration with radiculopathy in the cervical spine. Extensive amount of myofascial pain in neck, shoulder, upper back, leg muscles" (T283).

In contrast, Dr. Tetro assessed plaintiff's injuries and pain only to preclude her from her "regular employment" (T166); Dr. Yu found that plaintiff's symptoms were not credible to the degree alleged, and that she was capable of sedentary and light work (T172A); and plaintiff testified that she can perform a wide range of activities including cooking, some cleaning, and caring for her son (T318-21).

"Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings." Snell v. Apfel, 177 F. 3d 128, 135 (2d Cir. 1999). In his decision, ALJ Young found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms", but concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (T22).

When such a question of credibility arises, the decision of the ALJ must contain "specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that

weight." SSR 96-7P, 1996 WL 374186, *4 (S.S.A.).  The ALJ must consider the entire case record as well as factors such as:

> "1.     The individual's daily activities;
>
> 2.     The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3.     Factors that precipitate and aggravate the symptoms;
>
> 4.     The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5.     Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6.     Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7.     Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7P, 1996 WL 374186 (S.S.A.); 20 C.F.R. §404.1529(c).

While ALJ Young discussed several of these factors, his decision that plaintiff was not entirely credible did not contain sufficient "*specific* reasons for the finding on credibility, supported by the evidence in the case record . . . ." SSR 96-7P, 1996 WL 374186, *4 (S.S.A.).  The only specific reasons that ALJ Young cites for his decision is that "[t]he claimant is able to perform household chores, cook, care for her young son and herself.  These activities are not consistent with her allegations that she is totally disabled," and also relies on the opinion of Dr. Yu (T22).

ALJ Young did not sufficiently consider "[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms." SSR 96-7P, 1996 WL 374186, *3

(S.S.A.).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record . . . ." Id. at *4.  ALJ Young briefly mentioned the opinions of Dr. Lewis and Dr. Bansal, but omitted their respective conclusions that plaintiff has "*severe neck pain*" and an "*extensive amount* of myofascial pain" that were the result of impairments confirmed by the objective medical evidence (T276, 283) (emphasis added).  Further, SSR 96-7P requires the ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms". 1996 WL 374186 at *3.  Plaintiff was prescribed pain medications such as Lortab and Soma throughout most of her medical history (T125, 165), Flexeril in 2004 (T176), Celexa and Trazodone for pain in 2005 (T267), and Cymbalta for depression in 2005 (T260).  Even the Commissioner agrees that this factor must be considered:  "the Commissioner considers other factors, such as . . . medication . . ." Commissioner's Memorandum of Law [8], p. 22.  However, ALJ Young makes absolutely no mention of plaintiff's several medications (T22).

An ALJ is not always required to give exhaustive explanations for every factor required by SSR 96-7P. *See* Delk v. Astrue, 2009 WL 656319, *4 (W.D.N.Y. 2009) (Curtin, J.). ("Although his findings do not explicitly indicate whether he considered each of the factors enumerated in the Regulations as outlined above, the court finds the reasons given by the ALJ sufficiently specific to conclude that he considered the entire evidentiary record . . . ."). However, ALJ Young omitted the conclusions of several medical sources that supported plaintiff's credibility and omitted any mention of plaintiff's medication history, raising doubt as to whether the entire record was considered as required by SSR 96-7P and 20 C.F.R. §404.1529.          "Where there is a reasonable basis for doubting whether the

-24-

Commissioner applied the proper legal standard, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed." DiVetro v. Commissioner of Social Security, 2008 WL 3930032, *3 (N.D.N.Y. 2008); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)(same).  Therefore, I recommend that this case be remanded so that the ALJ may adequately discuss the factors of SSR 96-7P and clearly set out the reasons why (or why not) plaintiff is not entitled to full credibility.


## CONCLUSION

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings [7] be DENIED and that plaintiff's cross-motion [9] be  GRANTED in part and DENIED in part**,** and that the case be remanded to the Commissioner for further proceedings consistent with this opinion. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

Dated: October 9, 2009